**LAQUER, URBAN, CLIFFORD & HODGE LLP**
Michael Y. Jung, State Bar No. 245260
Email: *mjung@luch.com*
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Telephone: (626) 449-1882
Facsimile: (626) 449-1958

Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, and TRUSTEES OF THE SOUTHERN CALIFORNIA SURVEYORS JOINT APPRENTICESHIP TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>C.E.S.M., INC., a California corporation,<br><br>Defendant. | CASE NO.: 2:17-cv-02133<br><br>**COMPLAINT FOR**<br><br>**1) BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND VIOLATION OF ERISA § 515 [29 U.S.C. § 1145]**<br><br>**2) BREACH OF WRITTEN CONTRACT** |

Plaintiffs TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, and TRUSTEES OF THE SOUTHERN CALIFORNIA SURVEYORS JOINT APPRENTICESHIP TRUST complain and allege:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Courts exclusive jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)], to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2. This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947, as amended (hereinafter the "LMRA") [29 U.S.C. § 185(a)], which grants the United States District Courts original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3. Venue is proper in this Court pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the Plaintiffs Trusts (defined below) are administered, the signatory union maintains union offices, and where the contractual obligation is to be paid.

4. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5. Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, and Trustees of the Southern California Surveyors Joint Apprenticeship Trust (hereinafter collectively the "Trustees") are the trustees of four express trusts (hereinafter collectively the "Trusts") created pursuant

to written declarations of trust (hereinafter the "Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12, (hereinafter "Local 12") and various multiemployer associations in the construction industry in Southern California and Southern Nevada. The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)].

6. The Trustees, as trustees of the Trusts, are "fiduciar[ies]" with respect to the Trusts as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)].

7. At all times material herein, Local 12 has been a labor organization representing employees in the building and construction industry in Southern California and Southern Nevada, and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)].

8. The Trustees are informed and believe, and thereon allege, that at all times material herein, defendant C.E.S.M., Inc. (hereinafter "CESM") has been a corporation duly organized and existing by virtue of the laws of the State of California, with its principal place of business located in Monrovia, California.

**BARGAINING AGREEMENTS AND STATUS OF PARTIES**

9. On or about May 20, 2013, CESM executed and delivered a written collective bargaining agreement (hereinafter the "Agreement") to Local 12 whereby CESM agreed to be bound by the terms and conditions, with certain exceptions, of certain written and existing agreements between various multi-employer associations and Local 12. In particular, CESM agreed to be bound by the Master Labor Agreement (hereinafter the "Master Agreement") in effect between Local 12 and the Southern California Association of Civil Engineers, a multi-employer association. On or about May 20, 2013, CESM also signed written acknowledgments and acceptances of each of the Trust Agreements. At all times since at least May 20, 2013, the Master

Agreement has been an effective written collective bargaining agreement between the Southern California Association of Civil Engineers and Local 12.

10. At all times material herein, CESM has been obligated to the terms and provisions of the Agreement, Master Agreement, and Trust Agreements.

11. CESM is an "*employer*," as that term is understood in the Master Agreement and related Trust Agreements.

12. CESM is an "*employer*" as defined and used in section 3(5) of ERISA [29 U.S.C. § 1002(5)], and therefore, CESM is "*obligated to make contributions to a multiemployer plan*" within the meaning of section 515 of ERISA [29 U.S.C. § 1145]. The Trustees are informed and believe, and thereon allege, that CESM is also an "*employer*" engaged in "*commerce*" in an "*industry affecting commerce*," as those terms are defined and used in sections 501(1) and 501(3) of the LMRA [29 U.S.C. § 142(1) and § 142(3)], and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

## FIRST CLAIM FOR RELIEF

### Breach of Written Collective Bargaining Agreement and Violation of § 515 of ERISA [29 U.S.C. § 1145]

13. The Trustees hereby incorporate by reference paragraphs 1 through 12 above to the same effect as if set forth here verbatim.

14. Section 515 of ERISA [29 U.S.C. § 1145], provides "*[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.*"

15. CESM is an "*employer*" as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)], and is "*obligated to make contributions to a multiemployer plan*" within the meaning and use of section 515 of ERISA [29 U.S.C. § 1145].

///

16. By the terms and provisions of the Master Agreement and related Trust Agreements, and at all times material herein:

(A) CESM agreed to prepare and submit true, complete and accurate written monthly contribution reports (hereinafter "Monthly Reports") to the Trustees on a timely basis showing the identities of its employees performing work covered by the Master Agreement, the number of hours worked by or paid to these employees, and based upon the hours worked or amounts paid to employees, the proper calculation of the fringe benefit contributions due for such employees. At all times material herein, CESM has been obligated to submit its monthly reports and pay its contributions to the Trustees at their place of business in Pasadena, California, on or before the 10th day of each successive month;

(B) CESM agreed to permit the Trustees and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid pursuant to the Master Agreement and related Trust Agreements; and

(C) CESM agreed to pay to the Trustees fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to, applicable employees. These amounts are due and payable at the Trusts' administrative offices in Pasadena, California.

17. The Master Agreement further provides that if any employee who performs covered work is paid in a manner other than an hourly wage, CESM must pay the Trusts fringe benefit contributions on behalf of that employee based on 40 hours of work per week. Trustees are informed and believe and thereon allege that at all times material to this action Greg Embree ("Mr. Embree") performed work for CESM that was covered by the Master Agreement for which he was paid other than an hourly wage.

18. Trustees are informed and believe and thereon allege that at all times material to this action Mr. Embree was the principal of CESM. CESM paid Mr.

Embree other than an hourly wage for his work, which included work covered by the Master Agreement. On or about August 5, 2014, CESM signed a written Principal Employee Program Participation Agreement (the "PEPPA"). The PEPPA permitted CESM to report and pay contributions on behalf of Mr. Embree at a flat monthly rate in lieu of paying contributions on his behalf based on 40 hours of work per week as provided by the Master Agreement. The PEPPA provides that if CESM fails to abide by the terms and conditions of the PEPPA, CESM must pay fringe benefit contributions on behalf of Mr. Embree based on 40 hours of work per week as provided in the Master Agreement.

19. CESM submitted signed Monthly Reports to the Trustees for work performed by CESM's employees during the months of August 2016 through November 2016 and January 2017. On or about September 20, 2017, and thereafter, CESM violated the Agreement, Master Agreement, Trust Agreements, the PEPPA and its statutorily-mandated obligation under section 515 of ERISA [29 U.S.C. § 1145], to timely pay fringe benefit contributions to the Trusts pursuant to the Master Agreement and related Trust Agreements for that work. Because CESM breached the PEPPA by failing to pay the flat rate contributions for Mr. Embree during the months of August 2016 through November 2016 and January 2017 under the PEPPA and the Master Agreement, CESM is obligated to pay the Trustees fringe benefit contributions based on 40 hours of work per week on behalf of Mr. Embree for the months of August 2016 through November 2016 and January 2017.

20. CESM submitted Monthly Reports to the Trustees for the months of August 2016 through November 2016 and January 2017, admitting that it owed the Trustees fringe benefit contributions totaling at least $69,454.59, but CESM failed to timely pay the contributions owed. After crediting several untimely payments received from CESM pursuant to the breached settlement agreement discussed herein below, CESM currently owes fringe benefit contributions totaling $64,226.55, a large portion of which is the subject of the second cause of action for breach of written

settlement agreement discussed herein below. This amount is due and payable at the Trusts' administrative offices in Pasadena, California.

21. The Trustees are informed and believe, and thereon allege, that CESM has failed to pay certain additional amounts of fringe benefit contributions not presently known to the Trustees. These additional amounts will be established by proof.

22. CESM is a "delinquent," as that term is used in the Master Agreement and related Trust Agreements.

23. The Trustees are informed and believe, and thereon allege, that there is no legal excuse for CESM's breach of its obligations under the Master Agreement and related Trust Agreements in violation of section 515 of ERISA [29 U.S.C. § 1145].

24. CESM has failed to pay or to timely pay contributions owed to the Trustees, accruing since at least August 1, 2016. Pursuant to the Master Agreement, CESM agreed that in the event CESM failed to pay fringe benefit contributions or otherwise comply with the terms and provisions of the Agreement, Master Agreement and related Trust Agreements, CESM would be considered delinquent with the Trusts and would pay the Trusts the greater of $25.00 per month or ten percent (10%) of the total amount then due as liquidated damages for each delinquency.

25. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, the Court shall award the plan:(i) the unpaid contributions, (ii) interest on the unpaid contributions, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, (iv) reasonable attorneys' fees and costs, and (v) such other legal or equitable relief as the Court deems appropriate. For purposes of section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan or,

if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621.

26. Pursuant to the Master Agreement, related Trust Agreements, and Section 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], CESM owes the Trustees at least $6,945.48 for liquidated damages, plus additional amounts currently unknown to the Trustees that will be established by proof.

27. Pursuant to the Master Agreement, related Trust Agreements, and Section 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], CESM owes the Trustees interest at the rates established pursuant to 26 U.S.C. § 6621 from the respective due dates on all unpaid fringe benefit contributions. The exact amount of interest owed by CESM to the Trustees will be established by proof.

28. By the Master Agreement and related Trust Agreements, CESM agreed to pay the Trustees all legal and auditing costs in connection with the collection of any delinquency, whether incurred before or after litigation is, or was, commenced.

29. It has been necessary for the Trustees to engage legal counsel for the purpose of collecting said contributions and damages, and the Trustees are entitled to their reasonable attorneys' fees in connection therewith pursuant to the Master Agreement, Trust Agreements, and Section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)]. The exact amount of the legal fees due and payable has not been ascertained at this time. These amounts shall be established by proof.

30. Pursuant to Section 502(g)(2)(E) of ERISA [29 U.S.C. § 1132(g)(2)(E)], the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of the Trustees' judgment, the Trustees shall request the Court to:

(A) Order CESM to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trustees in an amount determined by the Court to be appropriate, and

(B) Order the creation of a constructive trust on all applicable property and order the transfer of the applicable property to the Trustees, and

(C) Order CESM to pay to the Trustees all amounts due the Trusts, including, but not limited to, the unpaid contributions, other damages for breach of contract, legal fees, audit costs, and other expenses and damages incurred.

## SECOND CLAIM FOR RELIEF

***Breach of Written Settlement Agreement***

31. The Trustees hereby refer to, and incorporate herein, paragraphs 1 through 30 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

32. On January 11, 2017, CESM and the Trustees entered into a written settlement agreement ("Settlement Agreement") to resolve a dispute over CESM's failure to timely pay the Trustees fringe benefit contributions, liquidated damages and interest based on Monthly Reports submitted by CESM for the work months of August 2016 through November 2016. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit "A"**, the terms and provisions of which are incorporated herein as set forth in full.

33. Pursuant to the Settlement Agreement, CESM admitted owing Trustees the principal amount of $66,389.55 based on Monthly Reports submitted to the Trustees for the months of August 2016 through November 2016, and agreed to pay the Trustees the principal amount of $57,979.50, plus interest on the declining balance of that total sum at the rate of eight percent (8%) per annum from December 15, 2016, until the balance was paid in full. Trustees and CESM agreed that this sum would be paid in twenty four (24) monthly installment payments of $2,614.02 each. The Settlement Agreement also requires the CESM to timely report and pay fringe benefit contributions and related amounts to the Trustees pursuant to the Master Agreement and related Trust Agreements. CESM agreed that if it defaulted under the Settlement Agreement by failing to timely pay the monthly installments, and/or failing to adhere to the CESM's monthly contribution obligations under the Master Agreement, then the principal amount of $66,389.55, plus 8% interest accruing from December 15,

2016, less all payments made under Settlement Agreement, would become immediately due and owing, and the Trustees would have the immediate right to take all necessary action to collect any and all amounts due, including attorneys' fees and costs.

34. CESM breached the Settlement Agreement by failing to timely pay fringe benefit contributions of at least $10,720.48 based on Monthly Reports submitted to the Trustees for the work month of January 2017. The Trustees provided written notice to CESM of its breach of the Settlement Agreement. CESM failed to timely cure the breach, resulting in default under the Settlement Agreement. As of the date of this complaint, at least $62,445.63 remains due and owing to the Trustees under the Settlement Agreement, plus the Trustees' reasonable attorneys' fees and costs pursuant to paragraph 11 of the Settlement Agreement.

35. The Trustees are informed and believe, and thereon allege, that there is no pending unsatisfied condition subsequent or legal excuse for CESM's failure to comply with the terms of the Settlement Agreement.

## PRAYER

**WHEREFORE**, as to all Claims for Relief, the Trustees pray for judgment against CESM as follows:

1. For unpaid fringe benefit contributions in the sum of $64,226.55, plus additional amounts as proved;

2. For liquidated damages in the sum of $6,945.48, plus additional amounts as proved;

3. For interest pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], and section 6621 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621, or at the legal rate, in amounts as proved;

4. For damages for breach of contract in the sum of $62,445.63, plus additional amounts as proved;

///

5. For interest as provided by contract in amounts as proved;

6. For reasonable attorneys' fees and costs of suit incurred, in amounts as proved; and

7. For such additional relief as this Court deems just and proper, including, but not limited to, the following:

7.1 An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to the Trustees;

7.2 For a good faith deposit or performance bond in favor of the Trustees in an amount equal to the total amount determined by this Court to be due to the Trustees, as proved; and

Dated: March 17, 2017 Respectfully Submitted,

LAQUER URBAN CLIFFORD & HODGE LLP

By: */S/* Michael Y. Jung

MICHAEL Y. JUNG
Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.

**WAIVER OF JURY TRIAL**

Plaintiffs hereby waive a jury trial in this action.

Dated: March 17, 2017 LAQUER URBAN CLIFFORD & HODGE LLP

By: */S/* Michael Y. Jung

MICHAEL Y. JUNG
Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.

# SETTLEMENT AGREEMENT

This Settlement Agreement entered into as of January 11, 2017, by and between OPERATING ENGINEERS PENSION TRUST, OPERATING ENGINEERS HEALTH AND WELFARE FUND, OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST and OPERATING ENGINEERS TRAINING TRUST (collectively the "Trusts") and C.E.S.M., INC. ("CESM"), a California corporation, is made with reference to the following facts:

## RECITALS

A. At all times material herein, CESM has been signatory to a collective bargaining agreement ("Agreement") with the International Union of Operating Engineers, Local Union No. 12 ("Local 12"). The Agreement incorporates the terms and provisions of the written Master Labor Agreement (hereinafter the "Master Agreement") in effect between Local 12 and the Southern California Contractors Association, a multi-employer association. The Master Agreement obligates CESM to pay fringe benefit contributions to the Trusts for all hours worked by or paid to each of CESM's employees who performs any work covered by the Master Agreement.

B. At all times material herein, CESM also has been signatory to a Principal Employee Program Participation Agreement ("PEPPA"), which obligates CESM to pay fringe benefit contributions to the Trusts on behalf of principal employee Greg Embree ("Mr. Embree") at the flat rate ranging from $2,771.30 to $2,827.30 per work month. If CESM fails to timely pay the monthly flat rate contributions, the PEPPA requires suspension of the principal employee's eligibility under Operating Engineers Health and Welfare Plan ("Health Plan") beginning the month following the month in which the delinquent contributions were due. The PEPPA also provides that if CESM fails to pay the monthly flat rate contributions, then contributions shall be paid on behalf of the principal employee for all hours worked or paid, and based on presumed forty hour work weeks if the principal employee is paid other than an hourly wage, pursuant to the Master Agreement. While employed by CESM, Mr. Embree performed work covered by the Master Agreement and was paid other than an hourly wage.

C. Pursuant to the Master Agreement and 29 U.S.C. §§ 1132 and 1145, CESM is liable to the Trusts for a sum greater than $66,389.55 for unpaid fringe benefit contributions and related amounts based on monthly reports submitted by CESM to the Trusts for the months of August 2016 through November 2016 ("Monthly Reports").

D. The Trusts and CESM, wish to resolve all disputes based on CESM's Monthly Reports.

E. The Trusts have not audited CESM's records for recent time periods to verify the accuracy of its reporting.

**AGREEMENT**

Now therefore, based on the mutual covenants contained herein, and for good and valuable consideration, the receipt of which is hereby acknowledged, the Trusts and CESM each agrees that the Recitals above are true and correct, and that:

1. CESM shall pay to Trusts the principal sum of $57,979.50, plus amortized interest thereon at the rate of 8% per annum accruing from December 15, 2016, by paying the Trusts $2,614.02 on or before January 15, 2017, and a like amount on or before the fifteenth (15th) day of each month thereafter until all principal and interest due under this Settlement Agreement has been paid in full.. All payments made pursuant to this Settlement Agreement shall be applied first to accrued interest and then to principal. CESM may prepay the amounts due under this paragraph without penalty, and interest will accrue only on the unpaid principal amounts. Notwithstanding anything to the contrary herein or any prepayment, CESM shall be obligated to pay the Trusts at least $2,614.02 on or before January 15, 2017, and a like amount on or before the fifteenth (15th) day of each month thereafter, until all principal and interest due under this Settlement Agreement has been paid in full. Crediting and apportionment of all principal payments shall be at the discretion of the Trusts, which they represent will be consistent with applicable federal laws, regulations and rules. All payments shall be made by check payable to *"Operating Engineers Trust Funds,"* and shall be delivered to:

Laquer, Urban, Clifford & Hodge LLP
Attn: Michael Y. Jung
225 South Lake Avenue, Suite 200
Pasadena, California 91101

or to such other address as CESM may be notified in writing by the Trusts.

2. Except for the amounts owed based on the Monthly Reports submitted by CESM to the Trusts, CESM shall report and pay in a timely manner all fringe benefit contributions and other amounts due to the Trusts pursuant to the Master Agreement and/or any other applicable collective bargaining agreement(s) or statute by which CESM may be bound, including any claim accruing prior to the date hereof that may be discovered in an audit conducted after the date hereof.

3. If CESM fails to satisfy any of the conditions in paragraphs 1 or 2 hereinabove, the Trusts shall send written notice of default by U. S. mail to C.E.S.M., Inc., Attn: Greg Embree, 2131 Redell Ave., Monrovia, CA 91016-4816, and by electronic mail to huskersurveyor@aol.com. If CESM fails to comply with all conditions of paragraphs 1 and 2 hereinabove within seven (7) days of the mailing and electronic transmission of said notice, CESM shall be in default under this Settlement Agreement, and the amount of $66,389.55, plus interest thereon at the rate of eight percent (8%) per annum accruing from December 15, 2016, less all payments received by the Trusts pursuant to paragraph 1 above, shall become immediately due and owing to the Trusts, and the Trusts shall have the immediate right to take any and all legal actions to collect the amounts due without any

further notice to CESM, including but not limited to filing a lawsuit against CESM in the U.S. District Court, or other court of appropriate jurisdiction, to collect all amounts owed under this Settlement Agreement, the Master Agreement and/or the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001 *et seq.*

4. Upon payment of all amounts due in paragraphs 1 and 2 hereinabove, the Trusts shall then release, acquit and forever discharge CESM and its agents, successors and assigns from all amounts owed by CESM to the Trusts based hours listed on the Monthly Reports heretofore submitted by CESM to the Trusts.

5. It is understood and agreed by CESM that the Trusts have not audited CESM's records for recent time periods, and that neither this Settlement Agreement, nor any other document shall be used to preclude the Trusts, under equitable estoppel, collateral estoppel, res judicata, accord and satisfaction, or any other theory, from collecting amounts owed by CESM under the Master Agreement based on an audit or based on hours not heretofore reported to the Trusts on CESM's Monthly Reports.

6. This Settlement Agreement shall be binding on the agents, successors and assigns of the Trusts and CESM.

7. Notwithstanding anything to the contrary contained herein, it is understood and agreed by CESM that the releases by the Trusts in this Settlement Agreement do not release or otherwise affect any potential liability that CESM may have to the Trusts for withdrawal liability or related amounts pursuant to the Employee Retirement Income Security Act of 1974, as amended [29 U.S.C. § 1381 et seq.], and in the event that CESM withdraws, withdrawal liability may be calculated based on contributions made by CESM pursuant to this Settlement Agreement.

8. This Settlement Agreement shall not be construed against the party preparing it, but shall be construed as if the parties hereto jointly prepared this Settlement Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

9. Each party hereto represents that the person executing this Settlement Agreement on its behalf is legally competent and is authorized to enter into this Settlement Agreement and to bind said party to its representations, terms and conditions as set forth herein.

10. This Settlement Agreement may be signed in counterparts. Furthermore, signatures delivered via facsimile and e-mail transmission shall have the same force and effect as the originals thereof.

11. In the event of any legal action or other legal proceeding concerning any term or condition contained herein or the enforcement of any provision herein, the prevailing party shall be entitled to its reasonable attorneys' fees, court costs and expenses. The term "prevailing party" shall be that as defined in California Code of Civil Procedure §1032.

Executed this __ day of January, 2017, at Monrovia, California by:

C.E.S.M., INC.

By: ______________________

Greg Embree, President

Executed this 12 day of January, 2017, at Pasadena, California by:

OPERATING ENGINEERS PENSION TRUST, OPERATING ENGINEERS HEALTH AND WELFARE FUND, OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST and OPERATING ENGINEERS TRAINING TRUST

By: ______________________

Joseph R. Ehrbar, Fund Manager